NOVA UNIVERSITY v. THE UNIVERSITY OF NORTH CAROLINA; THE BOARD OF GOVERNORS, UNIVERSITY OF NORTH CAROLINA; WILLIAM FRIDAY, PRESIDENT, UNIVERSITY OF NORTH CAROLINA; WILLIAM JOHNSON, CHAIRMAN, BOARD OF GOVERNORS, UNIVERSITY OF NORTH CAROLINA; MRS. HOWARD HOLDERNESS; DR.

Nova University v. University of North Carolina

E.B. TURNER; IRWIN BELK; F.P. BODENHEIMER; HUGH CANNON; PHILIP G. CARSON; LAURENCE A. COBB; T. WORTH COLTRANE; WAYNE A CORPENING; MRS. KATHLEEN R. CROSBY; DR. HUGH DANIEL, JR.; WILLIAM A. DEES, JR.; CHARLES Z. FLACK, JR.; JACOB H. FROELICH, JR.; DANIEL C. GUNTER, JR.; GEORGE WATTS HILL; LUTHER H. HODGES, JR.; JAMES E. HOLMES; ROBERT L. JONES; JOHN R. JORDAN, JR.; MRS. JOHN L. McCAIN; REGINALD McCOY; WILLIAM D. MILLS; MRS. HUGH MORTON; J. AARON PREVOST; LOUIS T. RANDOLPH; HARLEY F. SHUFORD, JR.; MACEO A. SLOAN; DAVID J. WHICHARD, II; MRS. GEORGE D. WILSON, MEMBERS OF THE BOARD OF GOVERNORS, UNIVERSITY OF NORTH CAROLINA

No. 8010SC176

(Filed 15 July 1980)

Colleges and Universities § 2– Florida institution – teaching program in N.C. – degrees granted in Florida – no right of U.N.C. Board of Governors to regulate

The Board of Governors of the University of North Carolina does not have the authority under G.S. 116-15 to license or regulate Nova University, a Florida institution, in its teaching program in this State which leads to degrees granted in Florida.

APPEAL by plaintiff and defendants from *Hobgood (Hamilton H.), Judge*. Orders entered 15 and 19 October 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 12 June 1980.

This is an appeal by plaintiff from an order denying its motion for summary judgment and by defendant from an order allowing discovery by the plaintiff. This court allowed certiorari to determine both questions.

Nova University is chartered in the State of Florida. It offers "external degree" programs in which instruction is given off-campus. Candidates for such degrees are not required to fulfill a university residence requirement. It has offered four "external degree" programs in North Carolina which would lead to graduate degrees given in the State of Florida. Three of the degrees would be in the field of education and one would be in criminal justice. Students meet in "clusters" of 25 to 30 persons at sites relatively near their homes and the faculty is brought in for weekend sessions. The students listen to lectures, take notes, have class discussions, and take final ex-

aminations. The students are also required to complete research projects. The first external program offered by Nova in this state was taught in the fall of 1973.

In 1976, Nova applied to the Board of Governors of the University of North Carolina for a license to conduct its programs in this state. A team of examiners was appointed by the Board of Governors who recommended on 31 October 1977 that the application be denied. On 7 December 1978, the Board of Governors' Committee on Educational Planning, Policies and Programs recommended to the Board of Governors that the application be denied, and on 8 December 1978, the Board of Governors denied Nova's application for a license. Plaintiff filed what it denominated a petition and complaint in the Superior Court of Wake County asking for a hearing *de novo* and a declaratory judgment that "[p]laintiff may teach in North Carolina and confer its degrees in Florida without interference" from the Board of Governors of the University of North Carolina. Plaintiff moved for summary judgment, and it was denied. The court then entered an order which allowed the plaintiff to conduct discovery.

The plaintiff petitioned this Court for certiorari as to the order denying its motion for summary judgment and the defendants petitioned for a writ of certiorari as to the order allowing discovery. We allowed both petitions.

*Powe, Porter, Alphin and Whichard, by E.K. Powe, Willis P. Whichard and Charles R. Holton; Glassie, Pewett, Dudley, Beebe and Shanks, by Hershel Shanks and Michael A. Gordon, for plaintiff appellant and appellee.*

*Attorney General Edmisten, by Assistant Attorney General Elizabeth C. Bunting and Assistant Attorney General Marvin Schiller, for defendant appellants.*

WEBB, Judge.

The Board of Governors of the University of North Carolina is empowered to license nonpublic educational institutions by G.S. 116-15 which provides in part:

(a) No nonpublic educational institution created or established in this State after December 31, 1960, by any person, firm, organization, or corporation shall have power or authority to confer degrees upon any person except as provided in this section. For the purposes of this section, the term "created or established in this State" or "established in this State" shall mean, in the case of an institution whose principal office is located outside of North Carolina, the act of issuance by the Secretary of State of North Carolina of a certificate of authority to do business in North Carolina. The Board of Governors shall call to the attention of the Attorney General, for such action as he may deem appropriate any institution failing to comply with the requirements of this section.

(b) The Board of Governors, under such standards as it shall establish, may issue its license to confer degrees in such form as it may prescribe to a nonpublic educational institution established in this State after December 31, 1960, by any person, firm, organization, or corporation; but no nonpublic educational institution established in the State subsequent to that date shall be empowered to confer degrees unless it has income sufficient to maintain an adequate faculty and equipment sufficient to provide adequate means of instruction in the arts and sciences, or in any other recognized field or fields of learning or knowledge.

The question posed by this appeal is whether under G.S. 116-15 the Board of Governors of the University of North Carolina has the power to license Nova University, a Florida institution, to conduct classes in this state which lead to degrees granted in Florida.

The Board of Governors concedes it would have no power to regulate the teaching of courses in this state if the granting of degrees were not involved. It also concedes it has no power to control the licensing of institutions in Florida for the granting of degrees. The Board contends that G.S. 116-15(b) which empowers the Board to issue licenses to confer degrees by out-of-state institutions includes the power to issue licenses for

in-state instruction which leads to out-of-state degrees. The Board argues that this power is inherent in the language of G.S. 116-15(b). The Board contends that it is specifically given the power to license the "conferral of degrees" and unless it also has the authority to license degree programs, Nova will successfully "end run" the grasp of the statute. The Board argues further that the purpose of Chapter 116 of the General Statutes is the planning and development in this state under the guidance of the Board of a "coordinated system of higher education" and this can only be accomplished if the Board has the authority to regulate "degree programs" as well as the "conferral of degrees."

The difficulty we have with the Board's position is that the statute does not specifically grant the power it seeks. What they ask is the power to regulate and license Nova's right to teach which is a restriction on freedom of speech. As Nova points out, other constitutional questions would also arise if we interpreted the statute as contended by the Board. We do not believe we should find a power in the statute by implication which could lead to such constitutional problems. If the General Assembly wants to give the Board the power to so restrict teaching in this state, it may do so specifically and the constitutional questions may then be raised. The statute is not clear in giving the Board the power it seeks. We do not believe we should find this power by implication. We hold that under G.S. 116-15(b) the Board of Governors does not have the power to license or regulate Nova University in its teaching program in this state so long as Nova does not confer degrees in this state.

We do not reach the questions raised by the defendants' appeal.

We reverse and remand to the superior court for a judgment consistent with this opinion.

Reversed and remanded.

Judges PARKER and CLARK concur.